UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| NICHOLE WALLACE )<br>Individually )<br>And on behalf of all )<br>similarly situated persons )<br> )<br>   Plaintiffs )<br> ) | Case No: 2:06-CV-5 |
| v. )<br> )<br>SHELDON J. FINKEL, DDS )<br> )<br>   Defendant. ) | |

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, by and through counsel, and would submit the following brief as her response to what purports to be the defendant's motion for summary judgment:

**I. STATEMENT OF THE CASE**

This matter grows out of the actions of the defendant on or about October 14, 2005, when he requested and received from Equifax[1] consumer reporting agency a consumer report (commonly known as a "credit report") on Plaintiff. The report was obtained without the consent of Plaintiff and without having a legitimate business need for it.

Plaintiff initiated this action by filing a class action complaint on or about January 3, 2006, to which the defendant responded *pro se* on or about January 18, 2006. The complaint alleges violations of various provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and invasion of privacy.

---

[1] Due to a clerical error, Plaintiff's affidavit, submitted herewith, states that the credit reporting agency of which the inquiry was made was Experian. The documentary evidence shows that the inquiry actually went to Equifax. Plaintiff reserves the right to submit a corrected affidavit within a reasonable period of time.

The defendant has not denied, in either his answer to the complaint or his motion for summary judgment, obtaining the consumer report. His only defense is that he had a legitimate business need.

The defendant filed his "Request for Summary Judgment" on or about May 2, 2006.

## II.  STATEMENT OF FACTS

On or about October 14, 2006, Plaintiff telephoned the defendant's dental office to make an appointment as a new patient. (Exhibit 1, Wallace affidavit).[2] Personnel at the defendant's business requested certain information from Plaintiff, purportedly for the purpose of opening a "new patient file." (Exhibit 1). Plaintiff provided the information requested. (Exhibit 1). At no time did the defendant's agents advise Plaintiff that her credit report would be checked, nor did she otherwise consent to such. Plaintiff was advised and understood that she would be required to pay for her treatment at the time of service and she was prepared to do so; at no time did she contemplate entering into a credit transaction with the defendant. (Exhibit 1). In fact, at all times relevant, Plaintiff maintained comprehensive health insurance through Blue Cross / Blue Shield. Plaintiff expressly informed the defendant that her coverage included dental services.

On the same day, apparently in accordance with the defendant's normal business practices (see, e.g., "Defendant's Request for Summary Judgment," Defendant's answer to the Complaint), the defendant requested and received a consumer report on Plaintiff from Equifax. (Exhibit 2).

## III.  LEGAL ARGUMENT

### A.  SUMMARY JUDGMENT STANDARD

Under the provisions of Rule 56 ( c), F.R.C.P., summary judgment is appropriate if "there

---

[2] Discovery has not yet been conducted in this case, so the only testimony to be submitted to the Court comes from Plaintiff's affidavit. The sole documentary exhibit is Plaintiff's Equifax consumer report.

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex v. Cattrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant "always bears the initial responsibility of informing the district court of the basis for its motion"... and ... must "demonstrate the absence of a genuine issue of material fact." *Id*.

After the movant has met its burden under Rule 56( c ), the non-movant must set forth "specific facts showing that there is a genuine issue for trial" *Id*. In ruling, the Court "must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); cited in *Reeves v. Thigpen*, 879 F.Supp 1153, 1166 (M.D.Ala. 1995).

In entertaining a motion for summary judgment, the court should review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but the court may not make credibility judgments or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence supporting the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 299-300 (2d Ed. 1995); *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000).

Plaintiff submits that there are several legitimate disputes of material fact which will preclude this Court's granting of the defendant's motion for summary judgment.

**B.  ARGUMENT – VIOLATION OF FCRA**

The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, dates from 1970, but its present incarnation is a product of extensive amendment by the Consumer Credit Reporting Reform Act of 1996.

Under the law, a "consumer report" means "any communication of information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [or] credit capacity ... for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance ... (B) employment purposes; or (C) any other purpose authorized under section 1681b" of the Act.

§ 1681b of the Act sets forth all of the permissible purposes of consumer reports; in fact, the opening paragraph states that consumer reports may be furnished "under the following circumstances **and no other**." The list of purposes is exhaustive and exclusive in that no purpose not listed is permissible. As one court has specifically held:

> The crucial words are "and no other" in the opening phrase: "Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances *and no other*." (Emphasis added.) We must interpret a statute in terms of its plain meaning. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 1024, 127 L.Ed.2d 455, (1994) (Thomas, J., concurring). "In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991).

*Chester v. Purvis*, 260 F.Supp.2d 711, 717 (S.D.Ind.,2003). The *Chester* court went on to add that, "[i]t appears plain on the face of these statutory provisions that an individual may neither obtain nor use a consumer credit report for any purposes unrelated to the list of enumerated purposes; in general, these purposes relate to collecting debts or determining whether a person is credit worthy for purposes of extending a loan or making child support payments." *Id*. At 718.

The only purpose set forth by the defendant which he contends authorized him to obtain

consumer reports on new patients is § 1681b(a)(3)(F)(I), which permits a reporting agency to furnish a consumer report to a person who "otherwise has a legitimate business need for the information ... in connection with a business transaction that is initiated by the consumer."

The sole question in this case is whether the defendant had "a legitimate business need" for pulling Plaintiff's credit report. If he did not, he is liable to Plaintiff for statutory or actual damages (whichever is higher) plus costs and fees, pursuant to 15 U.S.C. § 1681n.

As a threshold matter, Plaintiff submits that "Defendant's Request for Summary Judgment" is deficient in that it fails utterly to set forth any facts from which the Court could conclude that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. On the contrary, the motion is replete with the drafter's musings on the ethos of "reluctant payors" and conclusory observations about what he has read regarding landlords, credit card companies, and the state of Vermont law. There is no verification, authentication, indicia of admissibility of alleged facts, or citation to authority. In short, Plaintiff submits that the Court should reject the defendant's motion out of hand, and hereby moves for that relief.

Should the Court find, however, that the motion minimally meets the standards of Rule 56, the Court should still reject the defendant's entreaty. The fact is that the defendant had no legitimate purpose for pulling Plaintiff's credit report.

Plaintiff merely scheduled a dental appointment. As a new patient, she was asked for and provided certain personal information. She did not request the extension of credit, she had no desire to be extended credit, and she had no expectation that she would be extended credit. There was no notice to her that the information would be used to obtain a credit report. In fact, the defendant was placed on notice that Plaintiff would not require credit because of her insurance

coverage.

A permissible purpose for the defendant to have obtained Plaintiff's credit report would have been to collect on a debt, but that debt had to have been in existence at the time of the request. In *Rodgers v. McCullough*, 296 F.Supp.2d 895, 900 (W.D.Tenn.,2003), the district court held that a lawyer who had obtained a credit report in connection with a child support case could be liable for a violation of the FCRA. In that case, the court held that the plaintiff was not in arrears on any child support obligation at the time the attorney requested the consumer report, nor did the plaintiff owe the lawyer's client any debt and, in fact, the client did not have custody of the child and that an award of child support had not even been set at the time the lawyer obtained her consumer report.

The legislative history of the FCRA reveals that Congress intended the Act to protect consumers by limiting the availability of consumer reports. "The limitation on distribution [of such reports] is quite explicit. Information on a particular consumer may only be provided to a third party who requires it in connection with a specific transaction between that party and that particular consumer." *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092, 1096 (D.C.Ariz. 1974).

And courts have not been reluctant to protect the limitation on dissemination of consumer reports where the purpose of such dissemination was not contemplated by the Act. In *Mone v. Dranow*, 945 F.2d 306 (9th Cir. 1991), Dranow had sought the report to determine whether Mone had sufficient assets to pay a judgment in the $5,000,000 unfair competition action or in a separate action for $39,000 contemplated by Dranow. In agreeing that Dranow's purpose was impermissible, the 9th Circuit held that:

> Congress intended the FCRA to authorize a credit reporting agency to issue a

> consumer report to determine "an individual's eligibility for credit, insurance or employment." 116 Cong.Rec. 36,572 (1970) (Statement of Rep. Sullivan). Reports used for "business, commercial, or professional purposes" are not within the purview of the statute. Id. Determining whether an adverse party in litigation will be able to satisfy a judgment is plainly a purpose unrelated to "an individual's eligibility for credit, insurance or employment." A contrary construction of the statute would frustrate Congress' intent.

*Mone*, 945 F.2d at 308.

Other circuit courts are in accord. In *Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144, 1149 (3d Cir.1986), the Third Circuit concluded that to fall within the business need exception of section 1681b(3)(E), a transaction "must relate to one of the other specifically enumerated transactions in §§ 1681a(d) and b(3), i.e., credit, insurance eligibility, employment, or licensing." The court reasoned that a "broad interpretation of the 'business transaction' language of § 1681b(3)(E) would render the specificity of §§ 1681a(d) [defining 'consumer report'] and b(3) meaningless." *Id.* See also, *Ippolito v. WNS, Inc.*, 864 F.2d 440, 451 (7th Cir.1988).

The instant case – according to the motion for summary judgment – amounts to a prescreening of all potential dental clients. Such prescreening is permissible only where the entity requesting consumer reports is prepared to make a firm offer of credit. The Federal Trade Commission[3] has interpreted the Fair Credit Reporting Act to permit prescreening of individual consumers listed with credit reporting agencies. The FTC said in its interpretation, "prescreening is permissible under the FCRA if the client agrees in advance that each consumer whose name is on the list after prescreening will receive an offer of credit." 16 C.F.R. § 600. Cited in *Yonter v.*

---

[3] The Federal Trade Commission ("FTC") is the federal agency empowered by Congress to administer and enforce the FRCA. 15 U.S.C. § 1681s. The Act provides the FTC with "procedural, investigative and enforcement powers, including the power to issue procedural rules to enforce compliance" with the act. 15 U.S.C. § 1681s.

*Aetna Finance Co.* 777 F.Supp. 490, 492 (E.D.La.,1991). There is no evidence in the record that the defendant had any intention of offering credit to Plaintiff; contrariwise, the defendant's motion appears to contemplate that patients will pay his fee at the time of the appointment.

There is ample authority for holding the defendant liable to Plaintiff. Courts have consistently held that subscribers who violate the FCRA are not immune from liability as a matter of law. See, *e.g.*, *Cole v. American Family Mut. Ins. Co.* 333 F.Supp.2d 1038, 1045 (D.Kan.,2004).

### C. ARGUMENT – INVASION OF PRIVACY

The defendant has not argued that Plaintiff fails to make out a *prima facie* case of invasion of privacy, nor does his motion seek summary judgment on that claim, so Plaintiff will not burden the Court with argument. Plaintiff acknowledges, however, that should her FCRA claim fail, her invasion of privacy claim is due to be dismissed as well.

### CONCLUSION

There is no substantial dispute over material facts alleged by Plaintiff, which facts set forth a *prima facie* case of violation of the Fair Credit Reporting Act; therefore, the defendant is not entitled to judgment as a matter of law and its motion for summary judgment must be overruled.

RESPECTFULLY SUBMITTED, this 23rd day of May, 2006.

/s/ JAY LEWIS
Jay Lewis
Attorney for Plaintiff
P.O. Box 5059
Montgomery, Alabama, 36103
334-263-7733 (voice)
334-263-7733 (fax)

J-Lewis@JayLewisLaw.com
ASB-2014-E66J

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served the foregoing document on the following parties or attorneys by CM/ECF, by hand delivery or by placing a copy of the same in the United States mail, properly addressed and first-class postage prepaid on this 23rd day of May, 2006.

Dr. Sheldon J. Finkel
3044 McGhee Road
Montgomery, AL 36111

      /s/ JAY LEWIS
      Jay Lewis
      Attorney for Plaintiff
      P.O. Box 5059
      Montgomery, Alabama, 36103
      334-263-7733 (voice)
      334-263-7733 (fax)
      J-Lewis@JayLewisLaw.com
      ASB-2014-E66J